UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| EDDIE BRITTIAN | ) | |
| | ) | |
| v. | ) | 1:08-cv-169 \ 1:04-cr-150 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Eddie Brittian ("Brittian"), has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 143).[1] Brittian contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

The motion, together with the files and record in this case, conclusively show Brittian is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is not necessary and concludes that Brittian's § 2255 motion lacks merit and will be **DENIED** (Criminal Court File No. 143).

**I.     Standard of Review**

A sentence in a criminal case must be vacated if the Court makes a finding "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ."

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

1

28 U.S.C. § 2255. Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine after a review of the answer and the record whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. The Court finds it is not necessary to hold an evidentiary hearing.

A motion filed pursuant to 28 U.S.C. § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *United States v. Johnson*, 940 F.Supp. 167, 170 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Clemmons v. Sowders*, 34 F.3d 352 (6th Cir. 1994).

### III.     Procedural Background

On October 13, 2004, a grand jury in the Eastern District of Tennessee returned a twenty-three-count indictment charging Brittian, Louis Lumsden, and Michael Sanderfur as codefendants. In that indictment, Brittian was charged with several counts of firearms trafficking (Criminal Court File No. 2, Indictment). On February 9, 2005, a Superseding Indictment was filed additionally charging Brittian with conspiracy to distribute five hundred grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Criminal Court File No. 38, Superseding Indictment). On July 12, 2005, Brittian was charged in a second superseding indictment with a single count of conspiracy to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A) (Criminal Court File No. 60).

On July 20, 2005, one day before Brittian's trial was scheduled to begin, he pleaded guilty as charged to the second superseding indictment, i.e., conspiracy to distribute over 500 grams of methamphetamine (Criminal Court File No. 64). On January 30, 2006, Brittian was sentenced to 295 months imprisonment, five years supervised release, received a special assessment of $100.00, and a waiver of the fine (Criminal Court File No. 101). Brittain pursued a direct appeal, and, on January 23, 2007, the Sixth Circuit Court of Appeals affirmed his conviction and sentence (Criminal Court File No. 122). On July 12, 2007, the Supreme Court denied his writ of certiorari, *Brittian v. United States*, 551 U.S. 1174 (2007) (Criminal Court File No. 128). Brittian timely filed the instant § 2255 motion on June 26, 2008 (Criminal Court File No. 143).

## IV.     Factual Background

The following recitation of facts is taken from the Offense Conduct portion of Brittian's Presentence Investigation Report ("PSI"):

> 8.   Beginning in December 2003 until November 2004, Eddie Bernard Brittain, Jim Novak, Brett Richard, Louis Lumsden, Michael Sanderfur, Michael Canady, Erica Shaw, Joshua Sullivan and others were involved in a conspiracy to distribute large amounts of methamphetamine, cocaine base, and cocaine hydrochloride in southeastern Tennessee.
>
> 9.   Messrs. Brittain [sic], Lumsden and Sanderfur were also involved in firearms trafficking and the attempt to distribute hand grenades and bullet-proof body armor. On April 27, 2004, an undercover purchase of a Remington 30-06, Model 742, and a Winchester .308 caliber, Model 100, and an unknown amount of crack cocaine and marijuana was made from Louis Lumsden and Michael Sanderfur. During this transaction, the CS, Sanderful, and Lumsden discussed drug trafficking and their membership in the "Folk Disciples."
>
> 10.  On April 29, 2004, the CS purchased one-half ounce of crack cocaine from Lumsden. Mr. Sanderfur was also contacted in order to purchase three small bags of marijuana. Sanderfur then explained to the CI how he was beating the drug testing at CADAS in Chattanooga, by paying off the technicians who

3

worked there. After purchasing the crack cocaine, Lumsden informed the CS that he would have the guns in a couple of days.

11. On May 5, 2004, a CS purchased a .45 caliber pistol from Louis Lumsden. During the purchase, Mr. Lumsden stated that he could get more firearms, specifically Glock pistols still in the box. Lumsden even stated that he could get the paperwork for the firearms. During the transaction, Lumsden went to Sanderfur's residence to retrieve the .45 caliber pistol that he sold the CS.

12.
On May 21, 2004, a CS purchased a Cobray 9mm semiautomatic pistol from Lumsden and an unknown white male. Lumsden also provided the CS with a P.A.C.A. bulletproof vest. Lumsden stated that he had more firearms like the one he had just sold the CS.

13. On May 27, 2004, Mr. Lumsden sold an unknown quantity of cocaine hydrochloride to a CS. On June 3, 2004, Michael Sanderfur sold an SKS semiautomatic rifle to a CS. On July 12, 2004, a CS purchased a Keltech 9mm, Model P-11 from Eric Atkins for $600. The firearm and one-half ounce of crack cocaine were originally ordered from Lumsden, but Lumsden told the CI that he was at his probation officer's office and was unable to come at that moment. Lumsden directed Atkins to proceed with the sale of the firearm. Lumsden told the CS that after he was finished seeing his probation officer, he would bring the crack cocaine to the CS's residence. Later that afternoon, Lumsden sold the CS 14.1 grams of cocaine base crack for $600.

14. On July 23, 2004, Michael Sanderfur sold the CS one-half ounce of crack cocaine. On July 26, 2004, the CS purchased a SKS 7.62 rifle, an Intratec 9mm semiautomatic pistol, and an Intratec TEC-DC9 9mm pistol with an obliterated serial number from Mr. Lumsden. Mr. Brittain delivered the firearms to Mr. Lumsden. Lumsden then stated that he could get some fully automatic weapons that included MAC-11s, Mini-14s, and an M-16. After field testing the Intratec TEC-DC9 pistol, it functioned as a fully automatic weapon.

15. On July 29, 2004, a CS purchased a Century Arms International .308 caliber rifle from Mr. Lumsden for $1,000. Once Lumsden received the money, he placed a cellular telephone call. A short time later, Mr. Brittain arrived at the scene in a green Mercedes-Benz with the weapon.

16. On August 11, 2004, the CS purchased a High-Point rifle, Model-995, from Mr. Lumsden. The CS then reported that while inside Mr. Lumsden's residence, he observed Lumsden with 11 other firearms. He also reported that Mr. Lumsden was using marijuana heavily. Lumsden then stated that his firearms' supplier had a secret

room which contained a large amount of firearms to include fully automatic ones. Lumsden also stated that he could get multiple fully automatic firearms and hand grenades. The CS ordered some fully automatic weapons and grenades.

17.     On August 16, 2004, the CS purchased a Romarm 7.62 caliber rifle from Mr. Lumsden for $2,000. Lumsden stated that he was having a hard time getting the hand grenades.

18.     After Mr. Brittain was arrested for the instant offense, he made several phone calls from the Bradley County, Tennessee Detention Facility concerning his involvement with the distribution of methamphetamine. All phone calls from the jail are recorded and monitored. In one of the calls to Mr. Brittain's girlfriend, the defendant discussed the amount of methamphetamine that Brett Richard was apprehended with. Mr. Brittain has pled guilty to distributing at least 500 grams or more of methamphetamine. Cooperating witnesses have described Mr. Brittain's methamphetamine involvement to be much greater than 500 grams. One of the reliable witnesses would testify that Mr. Brittain has delivered five pound quantities of methamphetamine to them on at least one occasion for that person to distribute. Two reliable witnesses state that Mr. Brittain delivered two pounds and one pound amounts respectively for them to also distribute.

**DRUG AMOUNT ATTRIBUTABLE TO THE DEFENDANT**

19.     The defendant admitted being involved in a conspiracy to distribute 500 grams or more of methamphetamine. Reliable cooperating witnesses claim Mr. Brittain delivered methamphetamine totaling at least eight pounds to them. Eight pounds of methamphetamine equals 3.63 kilograms. The defendant also assisted Mr. Lumsden and Mr. Sanderfur in the distribution of cocaine base crack. All three individuals acted in concert with one another during the jointly undertaken criminal scheme. All of the known acts were reasonably foreseeable to each defendant. The guideline calculations are based only on the known amount of crack cocaine that the defendants conspired to distribute. According to the lab reports, the total quantity of cocaine base crack is 42.45 grams. The methamphetamine converts to 7,257.6 kilograms of marijuana and the cocaine base converts to 849 kilograms of marijuana. The total amount of marijuana that will be utilized for guideline calculations is 8,106.6 kilograms.

(PSI, pp. 5-6).

**V.     Analysis–Ineffective Assistance of Counsel Claims**

The Court discerns that Brittian asserts his trial counsel rendered ineffective assistance in five different instances, each of which the Court will analyze separately after discussing the law applicable to ineffective assistance of counsel claims.

### A. *Applicable Law*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms." *Strickland*, 466 U.S. at 686-88. In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct.13, 16 (2009) (quoting *Stickland v. Washington*, 466 U.S. at 688-89) (citations omitted).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996) (internal punctuation and citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d at 84.

The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id*. at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

When applying these standards, the Court is cognizant of the fact that there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen [v. Scroggy]*, 99 F.3d [1302,] 1310-11[6th Cir. 1996]). A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.

*Strickland*, 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

### B. *Ineffective Assistance of Counsel Claims*

Although Brittian's § 2255 motion is confusingly pled and difficult decipher, the Court discerns that he has raised five instances of ineffective assistance of counsel: (1) counsel's advice to accept a plea offer; (2) counsel's failure to object to enhancement based on firearm possession; (3) counsel's failure to object to lack of proof of type of methamphetamine; (4) counsel's failure to object to enhancement based on role in the conspiracy; and (5) counsel's failure to contest prior convictions.

#### 1. *Plea Offer*

Brittian claims "Attorney Douglas M.Cox's ineffective assistance of Counsel started in September of 2005 at a Plea Colloquy at Bradley County Jail, when he instructed the defendant to

accept a plea to 78 months of imprisonment and the forfeiture of all personal and family properties." (Criminal Court File No. 143, pp.5-6).[2] This claim is nonsensical, as Brittian entered his guilty plea on July 20, 2005, the day before his scheduled jury trial (Criminal Court File No. 64). The Court assumes Brittian is alleging that in September of 2005 he met with counsel and the government for a proffer session, but this was after he entered his guilty plea on July 20, 2005, so the Court assumes Brittian is alleging counsel was ineffective for advising him to meet for a proffer session.[3] Neither Brittian's allegations nor the record before the Court, however, demonstrate Brittian suffered any prejudice as a result of the proffer session. Therefore, even if counsel was deficient in scheduling a proffer session, Brittian sustained no constitutional violation.

For the sake of thoroughness, the Court will presume Brittian is also claiming counsel rendered ineffective assistance by advising him to enter a guilty plea rather than going to trial. It appears that Brittian claims he would have gone to trial "if it had not been for the threats and personal and family forfeiture at the Plea Colloquy." (Criminal Court File No. 143, p. 6). Brittian apparently challenges his attorney's advice that the likelihood of being acquitted was low because the United States had five witnesses who would testify at trial that he had sold them methamphetamine, and that his sentence could be reduced to about 78 months, if he pleaded guilty and provided substantial assistance to the government, as some of his co-defendants had done. Thus, the Court discerns Brittian claims his plea was involuntary as a result of alleged threats of

---

[2] There was no plea agreement in this case.

[3] The government's response notes that, "Petitioner did meet with federal investigators after pleading guilty, but he was unwilling or unable to provide any useful information about drug trafficking and was thus ineligible for a sentence reduction based on substantial assistance." (Criminal Court File 148, p. 8).

9

"personal and family forfeiture" and as a result of counsel's alleged erroneous sentencing advice regarding Brittian's sentencing exposure.[4] The Court will address the alleged threats and alleged sentencing advice separately.

### a. Alleged Threats

Brittian claims he "would have went [sic] to trial, if it had not been for the threats and personal and family forfeiture" that apparently occurred during his proffer session (Criminal Court File No. 143, pp. 5-6).[5] The proffer session, however, where the alleged threats transpired, happened subsequent to Brittian entering his guilty plea, thus, any alleged threats that occurred at that time had no effect on his guilty plea and offers him no § 2255 relief. The Court, however, for the sake of discussion, will explain why any threats alleged to have occurred prior to entry of his guilty plea likewise do not give rise to § 2255 relief.

Initially, the Court observes that contrary to the express directions of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, Brittian's claim does not "state the facts supporting [this] ground" of ineffective assistance of counsel. This claim is factually unsupported as Brittian has failed to explain who made the alleged threats and what he means by "personal and family forfeiture[.]" It is well-established that a § 2255 movant must set forth facts that entitle him to relief, as "[c]onclusions, not substantiated by allegations of fact with some

---

[4] Notably, however, Brittian does not request a jury trial but rather requests that his sentence be vacated and that he be resentenced to a sentence equal to the "admitted Leaders and Kingpin Conspirators in this case." (Criminal Court File No. 143, p. 8).

[5] To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). Brittian has not met this burden.

probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53. Consequently, Brittian has failed to set forth a legally sufficient claim for relief because he has omitted the factual support for his claim. This claim does not contain sufficient facts to constitute a viable claim for relief in a federal habeas court. For example, the Court is unable to determine what threats, if any, were made and what was subject to forfeiture.

Nevertheless, the Court observes that the transcript of the statements made by Brittian under oath, rebut the claims he now advances. Prior to taking the oath, Brittian and the Court engaged in the following colloquy:

> THE COURT: Is anybody forcing you to do this?
>
> BRITTIAN: No, sir. No, sir.
>
> THE COURT: Okay. And this is your voluntary choice to plead guilty here?
>
> BRITTIAN: Yes, sir.

(Rearraignment Transcript, "R.T." p. 2). Subsequent to Brittian taking the oath, the Court, Brittian, and the prosecutor engaged in the following colloquy:

> THE COURT: Has anybody forced you or compelled you or put any pressure on you in any way to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: So this is the same question I asked you while ago, is your decision to plead guilty here a voluntary one on your part?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. And as I understand it, there is no plea agreement in this case, is that correct?
>
> MR. PIPER: Judge, I just need to make the Court aware of this. I have told Mr. Cox that, certainly, I would not oppose the two points for acceptance of responsibility. Of course, Mr. Cox and I both

| | understand that all sentencing decisions are made by the Court, and I'm just explaining to the Court that that's what I've explained to him. Obviously, that third point, I would not file a motion for that because I have spent numerous hours over the past several days preparing for this trial. |
|---|---|
| | Secondly, Mr. Brittian has indicated through his attorney that he may be interested in cooperating with the United States and we would welcome that cooperation. There is some evidence to suggest that his wife may be involved or tangentially involved in the case, and I have explained to Mr. Cox that if indeed he, if Mr. Brittian is interested in cooperating, I would not force him to cooperate against his wife. And that's just generally a policy that I have. I don't make people cooperate against spouses or children. But that would be the only agreements we have, Judge. And I'm not sure those are much of an agreement, but I did want to make sure that those were on the record. |
| THE COURT: | Okay. Other than those matters that Mr. Piper has raised here, Mr. Brittian, has Mr. Piper promised you anything else about this case? |
| THE DEFENDANT: | No, sir. No, sir. |
| THE COURT: | Okay. And has anybody else other than Mr. Piper, Mr. Malone, or anybody from law enforcement, anybody else promised you anything about your case? |
| THE DEFENDANT: | No, sir. I haven't got from nobody else. That's it. |

(R.T., pp. 7-8).

Brittian's allegations of threats are directly contradicted by his responses to this Court during his rearraignment. Furthermore, although there was no plea agreement in this case, counsel for the United States did explain, in open court on the record, the terms of the invitation it extended to Brittian to provide substantial assistance.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030

(6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.)*, cert. denied*, 426 U.S. 953 (1976)). This Court scrupulously followed the Rule 11 procedure and Brittian is bound by his sworn statements he made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Fed. R. Crim. P. 11 requires the Court to ask the defendant certain questions which creates a record that can be relied upon to insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 ensures a colloquy that exposes the defendant's state of mind through personal interrogation. *Baker*, 781 F.2d at 88. Brittian's allegation that he did not enter a voluntary, knowing, and intelligent plea is refuted by the record. The record in this case clearly reveals that Brittian's plea was knowing and voluntary. Brittian acknowledged in open court that he understood the consequences of his guilty plea; and he consciously chose to plead guilty rather than go to trial. The meticulous record does not reveal any threat or other impropriety in the administration of the plea agreement.

Brittian is not entitled to an evidentiary hearing on this issue. If the Court were to allow an evidentiary hearing on this claim, it would undermine and eliminate the chief virtues of the plea bargain process -- speed, economy, and finality. *Blackledge,* 431 U.S. at 71-72. To permit collateral

attacks on guilty pleas to be based on mere conclusory claims would make every guilty plea subject to attack under § 2255 and render the oral responses given by a defendant pursuant to Rule 11 meaningless. *Blackledge,* 431 U.S. at 74; *Warner*, 975 F.2d at 1212.

Therefore, in light of his sworn statements to the contrary during the criminal proceedings, the Court finds Brittian claim of threats to be unsupported by facts, incredible, and unsupported by the record. Brittian has not presented any evidence to support his contention. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

In sum, Brittian's factually unsupported allegations do not raise a constitutional issue. Brittian's responses to the Court's questions under oath directly contradict his vague claims of threats; thus this claim fails. Accordingly, relief will be **DENIED** on Brittian's claim that he pled guilty as a result of threats.

    **b.**  **Counsel's Advice**

Brittian seemingly contends his plea was also involuntary because counsel advised that he "could" receive a sentence, possibly as low as 78 months if he provided substantial assistance to the government. Even if counsel rendered ineffective assistance of counsel in failing to adequately advise Brittian as to his sentencing exposure, Brittian has failed to demonstrate he suffered any prejudice as the result of counsel's alleged shortcomings, and therefore, as explained *infra* is not entitled to relief.

In order to demonstrate ineffective assistance of counsel in the context of a guilty plea, "the

defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As previously noted, to demonstrate a reasonable probability that he would have gone to trial, Brittian is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). Brittian has not presented any evidence demonstrating he would not have pleaded guilty and would have gone to trial had counsel not advised he could possibly receive a sentence as low as 78 months. Indeed, he requests that his sentence be recalculated to be more in line with the sentence of "the admitted Leaders and Kingpin Conspirators in this case." (Criminal Court File No. 143, p. 8).

In any event, Brittian was correctly informed of his sentencing exposure during his rearraignment (R. T., pp. 10-11). The Court had the United States Attorney advise Brittian of the possible penalties that could be imposed as the result of his plea. Brittian was advised that he was facing imprisonment of 10 years up to life, a fine of up to four million dollars, at least five years of supervised release up to life, and $100 special assessment. The Court notified Brittian he was looking at a mandatory 10 year sentence and Brittian acknowledged that he understood he was looking at a mandatory 10 year sentence (R. T., pp. 10-11). The Court specially asked Brittian if, knowing the maximum penalties, he still wished to plead guilty, to which he responded affirmatively (R.T., p. 11).

Therefore, Brittian's plea was knowing and voluntary and his ineffective assistance of counsel claim regarding his plea fails. Accordingly, Brittian is **DENIED** relief on his claim that counsel ineffectively advised him to enter a guilty plea**.**

## 2. *Firearm Enhancement*

Brittian claims counsel "should have known the Sentencing Commission had adequately considered in the drafting guidelines distribution of methamphetamine and possession of a firearm in connection with the sale of illicit drugs so that the base offense level for the possession offense could not be enhanced." According to Brittian, the "[s]entencing court is precluded from departing from the guideline sentence range when factors it relied upon for by [sic] district court in making departure, departured [sic] based on that factor was improper because the defendant had to be charged separately with a count for possession of a firearm before the two-level enhancement for firearm possession is allowed." From this convoluted claim, the Court discerns Brittian claims he should not have received a two-level sentencing enhancement for possessing a firearm in connection with drug dealing since he was not separately charged with a firearm offense, and counsel was ineffective for failing to object to the firearm enhancement.

Contrary to Brittian's allegation, counsel did object to the firearm enhancement. First, in his written objections to the Probation Office counsel "specifically object[ed] to the 2 point offense level increase contained in Paragraph 25 of the Presentence Investigation Report for possession of firearms in connection with the sale of illicit drugs." Second, during Brittian's judgment proceedings counsel raised the gun enhancement issue (Criminal Court File No. 114-1, p. 4). Indeed, he presented testimony from Brett Alan Richard that he had never seen Brittian with a weapon and did not know him to carry one (Criminal Court File No. 114-1, p. 37-38). Counsel also presented testimony from Jim Novak that he had never seen Brittian carry a gun (Criminal Court File No. 114-1, p. 41). Consequently, Brittian has not demonstrated counsel's performance was constitutionally deficient and no relief is warranted on this claim of ineffective assistance of counsel.

16

To the extent Brittian claims the Court erred by overruling counsel's objection to applying the two-level firearms enhancement, the claim is procedurally defaulted because he failed to raise it on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice . . . or that he is actually innocent." *Bousley v. United States*, 523 U.S. at 623 (internal punctuation and citations omitted). Brittian offers no explanation for his default. Specifically, he alleges no cause and prejudice or actual innocence. *Id*. (internal punctuation and citations omitted).

Accordingly, because Brittian offers no excuse for his failure to raise the Court's alleged erroneous application of the firearm enhancement issue at an earlier time, this claim is procedurally barred from review and relief will be **DENIED**.[6]

3. *Failing to Object to Government's Failure to Prove Type of Methamphetamine*

Brittian faults counsel for not requiring the government to prove whether he possessed D-methamphetamine or L-methamphetamine. Although the Sentencing Guidelines formerly mandated

---

[6] Nevertheless, Brittian's argument regarding the Court's application of the 2-level enhancement for the firearm is unavailing. The enhancement was properly applied as the testimony presented during Brittian's judgment proceedings, clearly demonstrated that he possessed a firearm on different occasions when he was selling drugs. Once the government proved possession, the burden shifted to Brittian to show that it was "clearly improbably that the weapon was connected with the offense. *United States v. Johnson*, 344 F.3d 562, 565-67 (6th Cir. 2003). Brittian did not during sentencing, and does not in this § 2255 proceeding, contest the connection of the firearms he possessed to the offense. In addition, the enhancement was permissible even though Brittian was not charged or convicted in a separate firearms offense. *See United States v. Blankenship*, 954 F.2s 12224, 1227 (6th Cir. 1992) (Enhancement of base offense level by two points for possessing dangerous weapon was proper even though government dismissed count charging defendant with using or carrying a firearm in relation to a drug trafficking offense). Thus, it was not err to apply the 2-level enhancement in this case.

17

harsher sentences for offenses involving d-methamphetamine, *see* U.S.S.G. § 2D1.1, comment (n. 10) (Nov. 1994), that distinction was eliminated by Amendment 518, which became effective on November 1, 1995. Therefore, at the time of Brittian's conviction and sentencing, the difference between d-methamphetamine and l-methamhetamine was immaterial as both types of methamphetamine were treated the same. *United States v. Frye*, No. 98-5174, 2000 WL 32029 (6th Cir. 2000) ("The distinction between 'l-' and '-' methamphetamine was eliminated by Amendment 518, which became effective on November 1, 1995. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 406, 21 U.S.C.A. § 846; U.S.S.G. App. C., 18 U.S.C.A.").

Here, at the time Brittian committed the offenses, in 2003 and 2004, the sentencing guidelines in effect at that time did not make a distinction between l-methamphetamine and d-methamphetamine. Therefore, Counsel was not ineffective for not objecting to the government's failure to prove whether d- or l- methamphetamine was involved in the conspiracy and Brittian did not suffer any prejudice. Accordingly, Brittian will be **DENIED** relief on his claim that counsel failed to object to the government's failure to prove the type of methamphetamine.

### 4. *Role in the Conspiracy*

Though confusingly pled, it appears Brittian claims that counsel should have known and informed the Court he was not a leader or organizer. A review of the PSI reflects zero points were awarded under paragraph 27, Adjustments for Role in the Offense. Likewise, a review of the judgement proceedings reflects that Brittian's sentence was not enhanced based on his role in the offense (Criminal Court File No. 114-1). Accordingly, relief on this claim will be **DENIED**.

### 5. *Failing to Contest Prior Convictions*

Brittian claims his sentence was enhanced by three prior convictions, none of which was a

a qualifying felony conviction for a crime of violence or drug offense. Brittian specifically challenges counsels failure to object to the following convictions: possession of marijuana in 1988, simple battery in 1989, and battery in 1998 (Criminal Court File No. 143, p. 8).

Brittian's prior convictions were used to calculate his criminal history category as a VI based on the total criminal history points of 14. The instant offense commenced in December of 2003. The 1988 possession of marijuana charge also included a charge of theft by receiving stolen property for which Brittian was sentenced to two years imprisonment on March 24, 1989. Thus, because the sentence of imprisonment exceeded one year and one month and the sentence was imposed less than fifteen years prior to Brittian's commencement of the instant offense, the probation officer correctly assessed 3 criminal history points for that offense (PSR, ¶ 40). As to his 1989 conviction for simple battery, the probation officer correctly assessed 0 criminal history points, and 1 point for his 1999 conviction for battery was correctly assessed pursuant to U.S.S.G. § 4A1.1(e).

Consequently, Brittian has not demonstrated counsel had any basis to object to the calculation of his criminal history points, thus, he has not demonstrated counsel performed deficiently. Accordingly, Brittian will be denied relief on his claim that counsel rendered ineffective assistance by failing to object to his criminal history points.

**VI.     Conclusion**

Brittian has failed to present any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Brittian is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

　　　　　　　　　　　　　　　　　　*/s/ R. Allan Edgar*
　　　　　　　　　　　　　　　　　R. ALLAN EDGAR
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE